**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1781-24

TAYLOR M. CUNHA,

     Plaintiff-Appellant,

v.

DENA M. TROISI and
JOHN TROISI,

     Defendants-Respondents,

and

ALLSTATE NEW JERSEY
PROPERTY & CASUALTY
INSURANCE COMPANY,

     Defendant.

_____

Submitted March 10, 2026 – Decided July 9, 2026

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2995-21.

Karim Arzadi, attorneys for appellant (Ernest Blair, on the briefs).

John C. Prindiville PA, attorney for respondent (John C. Prindiville, on the brief).

PER CURIAM

In a damages-only trial arising from an auto accident, the jury returned a no-cause verdict. The jury determined that plaintiff Taylor M. Cunha was not entitled to pain and suffering damages because she failed to prove a permanent injury resulting from the accident. The jury was unable to consider plaintiff's claim for unreimbursed medical expenses because the trial court granted defendant Dena M. Troisi's motion in limine to exclude the testimony of plaintiff's surgeon regarding her unreimbursed medical bills.

Plaintiff appeals the trial court's granting of defendant's motion in limine and overruling of plaintiff's objection to defendant's summation remarks, which she contended were unduly harsh and disparaging. We affirm.

I.

In 2021, plaintiff sued defendant[1] for pain and suffering and medical bills arising from a 2019 car accident in which defendant's vehicle collided with

---

[1] Plaintiff also sued John Troisi, the vehicle's owner, and Allstate New Jersey Property and Casualty Insurance Company. However, the trial court granted Troisi's unopposed motion for summary judgment, and the claims against Allstate were dismissed with prejudice under stipulation.

2

A-1781-24

plaintiff's vehicle. Plaintiff underwent medical treatment for lower back pain which she attributed to the accident. She received "physical therapy, chiropractic intervention, [and] medical management." She received three steroid injections, followed by a posterior lumbar foraminotomy with discectomy. In March 2024, Dr. Edward H. Scheid, Jr. performed a transforaminal lumbar interbody fusion on plaintiff to resolve her continuing pain.

In anticipation of a January 2025 trial, Dr. Scheid prepared a May 6, 2024 narrative report opining that plaintiff's back injury and the subsequent medical treatment was caused by the accident with defendant. He amended his report on September 13, 2024, after reviewing defendant's independent medical examination report disclosing that plaintiff's 2015 MRI exam revealed a disk protrusion in her lower back, and plaintiff's history of chiropractic treatment dating from 2014 through 2019. Dr. Scheid's new opinion attributed "30% of . . . [plaintiff's] lumbar symptomatology pathology to pre-existing conditions with 70% attributed to the subject motor vehicle accident dated [December 18, 2019]." He had previously opined that plaintiff's back ailment was entirely caused by the accident.

A-1781-24

A week prior to the trial, defendant moved in limine to bar plaintiff "from introducing evidence of medical expenses incurred following plaintiff's exhaustion of her $15,000 [personal injury protection (PIP)] coverage." Defendant argued that her $904,000 medical bills were inadmissible because they did not comply with the PIP fee schedule as required by N.J.S.A. 39:6A-12.

In deciding the motion during the trial, the court stated that, about four months earlier, a different trial court advised plaintiff—then represented by different counsel—that if she was going to have the $904,000 medical bills introduced into evidence, she needed "to address the [PIP] fee schedule." The court also noted that plaintiff never responded to defendant's letter to plaintiff asking for that information. The court limited plaintiff's claim to Dr. Scheid's bill of $459,599 because there was no "testimony regarding the [remaining] . . . outstanding bills."

The trial court first cited Jignyasa Desai, D.O., LLC v. N.J. Mfrs. Ins. Co., for the proposition that "the amount that the insurer pays for the [medical] service is determined by whether the service is similar to one already on the [PIP] fee schedule as required by N.J.A.C. 11:3-29.4(e)." 473 N.J. Super. 582, 585 (App. Div. 2022). The court ruled that Dr. Scheid's fees could be reduced

4

by the PIP fee schedule as it contained services that were similar to those he provided plaintiff thereby rejecting plaintiff's contention that she had no such obligation to comply with the fee schedule. The court held that Dr. Scheid's billing testimony should be excluded, in part, because "nothing in any of [his] reports . . . addresses his medical bills." It relied on Congiusti v. Ingersoll-Rand Co, Inc., where this court held that "a trial judge may in his or her discretion preclude expert testimony on a subject not covered in the written reports." 306 N.J. Super. 126, 131 (App. Div. 1997).

The court, however, did not explicitly bar plaintiff's entire claim for unreimbursed medical expenses. The court stated the verdict sheet would require the jury to decide if Dr. Scheid's surgery was related to injuries sustained in the auto accident, but it would not decide if his unreimbursed bills would be paid. The court reasoned that, if the jury decided the surgery was not related, its exclusion of Dr. Scheid's billing testimony would not be an appealable issue.

Yet, for reasons that are not clear in the record, the court did not follow through on its remarks by instructing the jury to decide if the doctor's services were attributable to the accident. The court's jury instructions, which were not objected to, made no reference to reimbursement for medical expenses. The verdict sheet only asked the jury: "Has plaintiff . . . proven by a preponderance

A-1781-24

of the objective credible medical evidence that she sustained a permanent injury that was proximately caused by the motor vehicle accident of 12/18/19?" If the jury decided "no," its duty was finished. If the jury decided "yes," it would then decide the "amount of money [that] would fairly and reasonably compensate . . . plaintiff . . . for her pain and suffering, disability, impairment, and loss of enjoyment of life proximately caused by the motor vehicle accident of 12/18/19?"

During closing arguments, plaintiff objected to defense counsel's remarks that:

> It was painful to sit there and read this deposition transcript and for plaintiff to have to admit that she lied on seven different occasions about her prior medical history.
>
> And you have to ask yourself what's the purpose of that?
>
> . . . .
>
> There's only one purpose for that. We call it secondary gain here . . . but she wanted to make her case look better. . . . What she did was try to hide from us . . . .

Plaintiff contended the statements were "way beyond [the] evidence" and to "say she's doing it for monetary damage[s] is not appropriate here." Defendant disagreed. The court overruled the objection, reasoning that

A-1781-24

plaintiff's deposition testimony "was untrue," which allowed defendant "to draw that inference and ask the jury" to do the same.

The jury decided that plaintiff did not sustain a permanent injury that was proximately caused by the accident with defendant. Consequently, it did not have to determine if she was entitled to any non-economic damages. This appeal followed.

II.

To determine the issues raised in this appeal, we first discuss the relevant provisions of the No-Fault Act (Act), N.J.S.A. 39:6A-1 to -35, and its 2019 amendments.

In 1972, the Act, N.J.S.A. 39:6A-1 to -35, was enacted to ensure "prompt reparation to accident victims," contain costs for automobile insurance, make insurance more available, and to ease the judicial caseload. In re Adoption of N.J.A.C. 11:3-29, 410 N.J. Super. 6, 14 (App. Div. 2009). "To meet the objectives, N.J.S.A. 39:6A-4 mandated that every standard automobile liability insurance policy contain PIP benefits for the payment of medical benefits, without regard to negligence, liability or fault to the named insured . . . who sustained bodily injury as the result of" a collision. Ibid.

Under the Act, economic loss from an automobile accident is the "uncompensated loss of income or property . . . including, but not limited to, medical expenses," N.J.S.A. 39:6A-2(k), that are recoverable against the tortfeasor, N.J.S.A. 39:6A-12. After our Supreme Court in Haines v Taft interpreted the Act to not allow an injured party to recover medical costs in excess of their PIP limits, 237 N.J. 271, 292 (2019), our Legislature amended the Act. L. 2019, c. 244 § 2 (Chapter 244). The amendment was meant to "ensure that low-income drivers who must settle for lesser PIP coverage options . . . will not be denied the ability to recover their unreimbursed medical expenses from those who caused their injuries." Governor's Signing Statement to S. 2432 & S. 3963 (Aug. 15, 2019). Consequently, N.J.S.A. 39:6A-12 was amended with the addition of the following underlined language:

> Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss as defined by . . . [N.J.S.A. 39:6A-2(k)], including all uncompensated medical expenses not covered by the personal injury protection limits applicable to the injured party and sustained by the injured party. All medical expenses that exceed, or are unpaid or uncovered by any injured party's medical expense benefits personal injury protection limits, regardless of any health insurance coverage, are claimable by any injured party as against all liable parties, including any self-funded health care plans that assert valid liens.

A month later, the Legislature further amended N.J.S.A 39:6A-12 to read:

> Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss as defined by . . . [N.J.S.A. 39:6A-2(k)], including all unreimbursed medical expenses not covered by the [PIP] limits applicable to the injured party and sustained by the injured party, including the value of any deductibles and copayments incurred through a driver's secondary insurance coverage and medical liens asserted by a health insurance company related to the treatment of injuries sustained in the accident. Medical expenses shall be subject to the current automobile medical fee schedules established pursuant to section 10 of []L. 1988, c. 119 (C.39:6A-4.6). In any case in which the recovery is for medical expenses only, a prevailing claimant shall be entitled to reasonable and necessary attorneys' fees incurred by the prevailing claimant in the collection of such medical expenses.
>
> [L. 2019, c. 245 (Chapter 245).]

Additionally, Chapter 245 amended N.J.S.A. 39:6A-4.6, by adding the following underlined language:

> a. The Commissioner of Banking and Insurance shall . . . promulgate medical fee schedules on a regional basis for the reimbursement of health care providers providing services or equipment for medical expense benefits for which payment is to be made by an automobile insurer under [PIP] coverage . . . by an insurer under medical expense benefits coverage pursuant to . . . [N.J.S.A. 39:6A-12], or for payment of unreimbursed medical expenses that are admissible as uncompensated economic loss pursuant to . . . [N.J.S.A. 39:6A-12].

A-1781-24

. . . .

c. No health care provider may demand or request any payment from any person in excess of those permitted by the medical fee schedules established pursuant to this section, nor shall any person be liable to any health care provider for any amount of money which results from the charging of fees in excess of those permitted by the medical fee schedules established pursuant to this section. <u>This section shall apply to unreimbursed medical expenses that are subject to the medical fee schedules and admissible as uncompensated economic loss pursuant to . . . [N.J.S.A. 39:6A-12].</u>

III.

With these governing statutes in mind, we first determine whether it was the trial court's responsibility to decide if defendant was obligated to pay Dr. Scheid's fees. Plaintiff, citing <u>Cuevas v. Wentworth Grp.</u>, 226 N.J. 480, 499 (2016), contends the trial court erred in not giving the jury the opportunity to discharge its constitutional duty to decide the merits of plaintiff's claim for damages.

We disagree with plaintiff, finding guidance from our opinion almost fifty years ago in <u>Fitzgerald v. Wright</u>, 155 N.J. Super. 494 (App. Div. 1978). There, we determined the "propriety" of a trial court's involuntary dismissal of a plaintiff's claim where no evidence was presented satisfying the statutory monetary minimum of medical expenses needed to recover under the Act. <u>Id.</u> at

496.  We held that "[w]here a fact dispute must be determined as an element of that decisional process it is more appropriate, efficient and less confusing for the judge to decide that dispute as well." Id. at 504.  Citing Lopez v. Swyer, 62 N.J. 267, 274 (1973), we reasoned "that factual and legal issues relating to the application of the discovery rule to the defense of the statute of limitations 'can be better done by a judge than by a jury'".

In a case where the plaintiff seeks to comply with the PIP fee schedule requirement or attempts to prove that a provider's fees are usual and customary, they may have to introduce evidence showing the amounts paid by an insurer. However, N.J.S.A. 39:6A-12, bars the introduction of "evidence of amounts collectible or paid as [PIP] benefits." Id. at 501.  Thus, evidence of what a health provider has already received from an insurance company to cover a party's medical expenses is not admissible.  For example, here, if Dr. Scheid had received payment of some of the $459,559 from defendant's insurance company but plaintiff was trying to recover the balance, to establish Dr. Scheid's usual and customary amount, bills showing the total amount charged minus what he received from the insurance company would be necessary but inadmissible under N.J.S.A. 39:6A-12.  To avoid such evidentiary issues, we hold that

11

questions involving compliance with the PIP fee schedule requirements must be resolved by the trial court.

IV.

We next address plaintiff's challenge to the trial court's granting of defendant's in limine motion barring Dr. Scheid from testifying that she incurred billing of $459,599 for the surgery he performed. Plaintiff does not appeal the remaining unpaid bills by other medical providers.

Plaintiff contends a retrial is necessary because in granting the in limine motion, the trial court "intruded upon the function of the jury to determine the credibility, weight, and probative value of Dr. Schied's expert[] testimony" by excluding the billing portion of his testimony because his bills did not conform with the PIP fee schedule. Plaintiff essentially argues the PIP fee schedule requirement in N.J.S.A. 39:6A-12 does not require plaintiff to provide a medical billing expert's report or testimony even if the payment sought is for services that allegedly do not appear on the PIP fee schedule. And even if Dr. Scheid's billing is "subject to the PIP fee schedule," she argues, quoting N.J.A.C. 11:3-29.4(e), the jury must determine "'a reasonable amount considering the fee schedule amount for similar services or equipment in the region where the service or equipment was provided.'" Plaintiff emphasizes that defendant has cited no case

A-1781-24

law that a plaintiff must provide "expert proof from a 'billing expert' or 'coding expert' in order to prevail on a claim for unreimbursed medical expenses."

Defendant argues that the trial court correctly granted her motion in limine to bar evidence of Dr. Schied's bills because N.J.S.A. 39:6A-12 requires the medical expenses to be subject to the PIP fee schedule "not what Dr. Scheid believes is reasonable and customary." Stressing that plaintiff failed to present "billing expertise" to show Dr. Schied's fees were reasonable and necessary under the PIP fee schedule, defendant asserts the trial court properly declined to allow the jury to consider Dr. Schied's fees as plaintiff's economic damages. Defendant further avers that plaintiff's failure to provide medical billing expert testimony, despite opportunities to do so, was reason enough to support the court's decision to exclude evidence of plaintiff's medical expenses. Defendant maintains that because the motion in limine was heard on the third day of trial, after plaintiff took Dr. Schied's de bene esse deposition the day before, plaintiff gave defendant "no opportunity to understand the argument . . . made by plaintiff"—namely, that Dr. Scheid's services and Current Procedural Terminology (CPT) codes were not found in the fee schedule. Moreover, defendant asserts that Dr. Sheid's report did not reference his billing or produce any evidence to show his billing was usual and customary, nor did he or plaintiff

put the defense on notice that his CPT codes were not in the PIP fee schedule and therefore he would charge what was usual and customary.

We side with defendant's position. The statutory tenor of the Act leads us to conclude that the trial court properly exercised its discretion in excluding Dr. Scheid's billing testimony. See Griffin v. City of East Orange, 225 N.J. 400, 413 (2016) (alteration in original) (quoting State v. Brown, 170 N.J. 138, 147, (2001)) ("When a trial court admits or excludes evidence, its determination is 'entitled to deference absent a showing of an abuse of discretion, i.e., [that] there has been a clear error of judgment.'"). Claims for unreimbursed medical expenses "shall be subject to the" PIP fee schedule. N.J.S.A. 39:6A-12. Likewise, a tortfeasor is not liable for unreimbursed medical expenses "which results from the charging of fees in excess of those permitted by the medical fee schedules." N.J.S.A 39:6A-4.6(c). It is common that a health provider's CPT code is not found in the fee schedule. See Jignyasa Desai, 473 N.J. Super. at 585 (explaining that "CPT codes and the fee schedules may sometimes be out of synch" because the codes are promulgated by the American Medical Association while the fee schedules are promulgated by the Commissioner of the Department of Banking & Insurance (DOBI)).

14

However, the PIP fee schedule detailing CPT codes does not explicitly apply to non-insurers, such as the parties in this matter, which involves claims against a tortfeasor driver for unreimbursed medical expenses. See N.J.S.A. 39:6A-12. Even though the trial court and the parties cite N.J.A.C. 11:3-29.4(e) for guidance regarding Dr. Scheid's service fees they do not address this apparent conflict. Nevertheless, we agree with the trial court that Dr. Scheid's bills should not have been considered by the jury.

The DOBI Commissioner has the responsibility to promulgate medical fee schedules for "automobile insurer[s]" and motor vehicle insurance, to be applied to "payment[s] of unreimbursed medical expenses." N.J.S.A. 39:6A-4.6. Accordingly, N.J.A.C. 11:3-29.4(e) provides "the insurer's limit of liability for any medical expense benefit for any service or equipment not set forth in or not covered by the fee schedules shall be a reasonable amount considering the fee schedule amount for similar services." N.J.A.C. 11:3-29.4(e)(1) further provides that the

> determination of the usual, reasonable and customary fee means that the provider submits to the insurer his or her usual and customary fee by means of explanations of benefits from payors showing the provider's billed and paid fee(s). The insurer determines the reasonableness of the provider's fee by comparison of its experience with that provider and with other providers in the region.

15

Although DOBI's "[p]urpose and scope" provision of Subchapter 29 (N.J.A.C. 11:3-29.1 to -29.6) does not explicitly state that it applies to payments of unreimbursed medical expenses, it follows that, since the Legislature intended the fee schedules to apply to such payments, the related regulations explaining how to apply the fee schedules should apply.

Based on this statutory and regulatory scheme, we conclude that N.J.S.A. 39:6A-12's requirement that claims for unreimbursed medical expenses in excess of PIP limits be subject to the medical fee schedule should not foreclose recovery of fees not listed in the schedule. The procedures in N.J.A.C. 11:3-29.4(e) should determine whether a health provider's services are subject to the fee schedule and how to proceed if they are not.

With this in mind, we now address the parties' respective burdens regarding claims for unreimbursed medical bills for services that are not on the PIP fee schedule. Again, we look to Fitzgerald.

In Fitzgerald, this court noted that the Act "does not contain any provision relating to when, how, or by whom the question of compliance with the [monetary minimum] threshold requirement should be decided." 155 N.J. Super. at 501. In recognizing the "troublesome procedural problems relating to the burden of going forward and the burden of persuasion on the issue of

16

applicability," id. at 497, we held that "[f]airness and efficiency dictate that plaintiff should have the burden of proving compliance with that threshold in order to establish a prima facie case," id. at 499. The plaintiff had the "requisite information" needed to establish compliance and since the "plaintiff cannot recover in the absence of evidence of compliance with the threshold requirement, he should have the burden of proof on this issue." Id. at 499-500. "If [the] defendant contests the reasonableness or necessity of these expenses, it should be [the defendant's] burden to come forth with evidence in support of [this] contention subject to any countervailing evidence by [the] plaintiff." Id. at 500. The plaintiff, however, still had "to prove by a preponderance of the evidence that the medical expense and its reasonableness and necessity conforms with the statutory requirement." Id. at 501.

The reasoning applied in Fitzgerald should apply here as well. Efficiency supports the burden be placed on plaintiff, as she is in a better position to know what services resulted in her unreimbursed medical expenses. In the typical PIP reimbursement context between health care providers and insurers "[t]he burden of establishing entitlement is on the plaintiff." Langley v. Allstate Ins. Co., 206 N.J. Super. 365, 368 (App. Div. 1985). It follows that the preponderance of the evidence burden applies at trial for a plaintiff's claims for unreimbursed bills for

services not set forth in the fee schedule.  Once a plaintiff makes a prima facie showing that their claims either comply with the fee schedule requirement or are not subject to it, and the defendant contests the claims, the burden shifts to the defendant "to come forth with evidence in support of [their] contention[,] subject to any countervailing evidence by plaintiff."  Fitzgerald, 155 N.J. Super. at 500.

Applying this procedure, we are convinced that the evidence of plaintiff's unreimbursed medical bills was correctly barred.  However, we take a different route than the trial court in reaching this decision.

In barring Dr. Scheid's billing testimony, the trial court determined that his reports did not address his billing.  This is incorrect.  His May 6, 2024 report explicitly states that "[a]ll billing related to this treatment following this accident for both physicians and all facilities [was] usual and customary and related to the accident dated 12/18/2019."  Therefore, exclusion of Dr. Scheid's testimony on this ground was improper.  See McCalla v. Harnischfeger Corp., 215 N.J. Super. 160, 171 (App. Div. 1987) ("[T]he logical predicates for and conclusions from statements made in the [expert's] report are not foreclosed" from testimony).  It was, however, proper to bar his billing testimony because plaintiff failed to make a prima facie showing that his service fees complied with the fee schedule requirement under N.J.S.A. 39:6A-12.  Given that plaintiff

failed to establish the PIP fee schedule requirement, it is not necessary to address her assertion that the court erroneously decided that Dr. Scheid's CPT codes were similar to others listed on the fee schedule and should be reduced to match the schedule.

Dr. Scheid's billing testimony was also excludable because there was no explanation of benefits demonstrating other payors had paid his alleged usual, customary and reasonable (UCR) fee, nor was there any testimony indicating whether any of Dr. Scheid's CPT codes were similar to a listed code or whether an updated CPT code should be cross-referenced to the old code—a process known as cross walking. See Jignyasa Desai, 473 N.J. Super. at 586. We are convinced the doctor's invoice statement falls short of what is required to establish by a preponderance of the evidence that his fee was his UCR fee and not subject to the fee schedule. The trial court was thus correct to exclude evidence of Dr. Scheid's unreimbursed medical expenses.

V.

Given our holding that the trial court correctly excluded Dr. Scheid's billing testimony, there is no merit to plaintiff's contention that reversible error occurred when the court failed to instruct the jury on her economic damages claim and direct it to decide if she was entitled to those damages. Plaintiff did

19

not object to the court's omission. Plaintiff's economic damages—the unreimbursed medical bills—did not require a jury finding that the bills were related to a permanent injury sustained by plaintiff from the accident. See Miskelly v. Lorence, 380 N.J. Super. 574, 578 (App. Div. 2005) (quoting Martin v. Chhabra, 374 N.J. Super. 387, 394-95 (App. Div. 2005) (alteration in original) ("[P]ersons who fail to surmount the verbal threshold are precluded from recovering only noneconomic losses.")).

Plaintiff's only claim for economic damages was for Dr. Scheid's surgery bills. There is no indication in the record that plaintiff attempted to introduce any other evidence to support her claim for economic damages other than Dr. Scheid's billing testimony. The lack of evidence demonstrating the amount of plaintiff's medical expenses to the jury means that any award would have been speculative and impermissible. See Kelly v. Berlin, 300 N.J. Super. 256, 268 (App. Div. 1997) (quoting Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987)) ("[A] plaintiff must 'prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate.'"). Accordingly, even though the court erred by failing to instruct the jury on economic damages, or include further questions on the jury verdict sheet, it was not plain error because it "'was

20

unlikely to prejudice the [plaintiff's] case.'" State v. Montalvo, 229 N.J. 300, 320 (2017) (quoting State v. Singleton, 211 N.J. 157, 182 (2012)).

VI.

Finally, we address plaintiff's contention that the trial court erred in overruling her objection to defendant's improper and prejudicial summation remarks. Plaintiff points to defendant's allegations that she lied on "seven different occasions about her prior medical history" to refute her claims. Citing Rodd v. Raritan Radiologic Assocs., PA, 373 N.J. Super. 154, 171 (App. Div. 2004), she argues these remarks are beyond the "broad latitude" afforded to summations because a party may not "use disparaging language to discredit the opposing party."

A party is given broad latitude in summation but must "'not misstate the evidence nor distort the factual picture.'" Geler v. Akawie, 358 N.J. Super. 437, 467 (App. Div. 2003) (quoting Diakamopoulos v. Monmouth Med. Ctr., 312 N.J. Super. 20, 32 (App. Div. 1998)). Arguments are permitted based on the evidence, and "any conclusion which the jury is free to reach." Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999). Thus, a summation "may draw conclusions even if the inferences . . . are improbable, perhaps illogical, erroneous, or even absurd, unless they are couched in language

21

transcending the bounds of legitimate argument, or there are no grounds for them in the evidence." Ibid.

A reviewing court evaluates challenged remarks not in isolation but in the context of summation as a whole. State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008) (citing State v. Carter, 91 N.J. 86, 105 (1982)). The challenged remarks are to be "viewed in the context of the entire record." State v. Bey, 129 N.J. 557, 622 (1992). Furthermore, summation remarks do not warrant a new trial unless they "are so prejudicial that 'it clearly and convincingly appears that there was a miscarriage of justice under the law.'" Bender v. Adelson, 187 N.J. 411, 431 (2006) (quoting R. 4:49-1(a)).

Having considered plaintiff's and defendant's contentions in light of these principles, we conclude that her arguments are without sufficient merit to warrant extensive discussion in a written opinion. R. 2:11-3(e)(1)(E). Simply put, defendant's summation remarks do not rise to the level of being unduly harsh or disparaging. Defendant was merely asking the jury to make an inference based on undisputed inconsistencies in plaintiff's testimony regarding plaintiff's motive to misrepresent her prior medical history.

22

To the extent we have not addressed any of plaintiff's contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1781-24